Peckham, J.
In relation to the questions arising upon this application of the purchaser Wolff, to be relieved from his bid at the judicial sale, on the ground that the interest of the wife of Bauer had not been duly conveyed by virtue of her power of attorney to her husband, we are of the opinion that the order of the General Term is erroneous, and for the reasons stated in the dissenting opinion of Mr. Justice ANDREWS, at the General Term.*
*413 The limitation sought to be imposed upon such power of attorney, that it only authorized Mrs. Bauer’s, husband to sign his name to conveyances of lands belonging to her, is not, we think, sustained by the language of *414 the instrument. Indeed, the learned Judge who so held in his opinion at the General Term, in order to arrive at his conclusion, rejects as surplusage the language of the power which authorizes the husband to convey for her *415 and in her name, and as her act and deed to sign, seal, execute, acknowledge and deliver all necessary releases of dower and thirds. He construes the language used in the first part of the power as confining its application to *416 the execution of a conveyance of any and all lands belonging to. Mrs. Bauer, and he says the words “ releases, of dower,’’ subsequently used, have no relation to the power actually granted, and hence are surplusage.
*417 We think, however, that the language as to “ releases of dower” was used for the very purpose of authorizing the husband to do as he has done, and that the language of the first part of the power, when speaking of lands, etc., *418 belonging to the wife, does not limit and was not intended to limit the operation of the words “ releases of dower and thirds,” so as to make them of no meaning or importance, but, on the contrary, was intended by their use to *419 confer authority on the husband to release her inchoate right of dower in lands belonging to him. Indeed, she continues the statement of her purpose by inserting in the instrument a power to execute other instruments for the conveyance, surrendering and relinquishing all or any part of her estate, right, title and interest, whether vested or contingent, choate or inchoate, therein. The language used in the first part of the power should not be held to operate all through it and limit the otherwise plain meaning of the paper.
We think there is no objection to the title arising out of the power of attorney given by the wife to the husband. She had the right to execute a power of attorney under the act, chapter 300 of the Laws of 1878, and in executing such power she could appoint her husband her agent or attorney in fact.
As to the objection that certain creditors by judgment against Bauer were not made parties, nor the sureties on certain appeal bonds, we think a sufficient answer is made by the fact of the entry of the memorandum by virtue of section 1256 of the Code of Civil Procedure, “lien suspended on appeal.” We think the meaning and purpose of the Legislature in the enactment of that and the succeeding sections were to release the lien of the judgment so suspended on appeal in regard to all property upon which it otherwise would become a lien until the court orders that it be restored by a re-docket. The sureties upon the first appeal to the General Term consented to the entry of the order which did not in terms provide as to subsequently acquired property, but if we are right in our construction of the statute it was not necessary to so state it in the order. The law itself provided for the fact. The sureties, upon a further appeal taken to the court of appeals, consented in terms to the order suspending the lien, including after acquired property. Upon the affirmance of the judgment by the latter court the sureties on the last appeal bond took an assignment of the judgments *420 and in their hands there was no longer any liability on the sureties on the first appeal.
Such sureties became, on the giving of the second, undertaking to pay the judgments, sureties for the second sureties, and when the second sureties paid or discharged their obligations to the owner of such judgments and took an assignment of them, they could not enforce them against the first sureties. Under these circumstances, there is no reason on this ground for releasing the purchaser from his bid.
The respondent here does not insist upon an objection that these questions were doubtful, and a purchaser ought not to be required to take such a title, but, as we understand, if the questions above discussed should be decided in 'favor of the title, he is willing to take it, although, those who are not parties here would not be legally barred by our decision from hereafter raising the question.
As our decision depends upon the construction of statutes, the rule of stare decisis would be effectual as an answer to any further claim, and we think the purchaser entirely justified in his waiver.
Our conclusion is .that the order of the General Term should be reversed and that of the Special Term affirmed» with costs in all courts.
. All the judges concurred.

 The dissenting opinion of Andrews, J., at the General Term was as follows:
Andrews, J. (dissenting)—The action was brought to foreclose a purchase money mortgage for $5,000, dated September 2, 1890. *413 The action was commenced October 22, i8gr, and judgment of foreclosure and sale was entered December 22, 1891. By the terms of the judgment the premises were directed to be sold subject to a lease expiring May 1, 1898, and to a first mortgage for $17,019.22. The property was sold at auction on January 21, 1892, and the petitioner, Charles Wolff, was the purchaser, for the price of $5,600, over and above the incumbrances] above mentioned ; and said petitioner paid to the referee $560, ten percent, on the amount of his bid, together with the auctioneer’s and exchange fee, and signed the usual terms of sale. Subsequently a motion was made by the petitioner to be relieved from his purchase, and from the order denying such motion this appeal is taken.
It appears that one Moritz Bauer became the owner of the equity of redemption of the mortgaged premises by deed from Hobart Oakley, dated October 4, 1890. By deed dated October 20, 1890, executed by said Moritz Bauer in his own behalf, and also, executed by said Bauer in the name of his wife, Caecilia Bauer, as her attorney in fact, such equity of redemption was conveyed to one Rudolph Guggenheimer. The power of attorney, under which said Bauer acted as the attorney of his wife, was executed and acknowledged by her, and recorded in the year 1881. It describes both the parties thereto as being of the city of New York, and so likewise does the deed to Guggenheimer. Said power authorizes said attorney “ to contract for the sale of and to grant, bargain, sell and convey all or any lands, tenements or hereditaments or real estate to me belonging, situate, lying and being within the United States of America, whether belonging to me individually or jointly with another or others, at public or private sale, for cash or upon credit, or partly for cash and partly upon credit, and for such price or prices and upon such other terms and conditions as to my said attorney may seem meet and proper, and for the purpose aforesaid, and in my name, place and stead, as my act and deed, to sign, seal, execute and acknowledge and deliver all necessary or proper contracts, deeds, conveyances, releases, releases of dower and thirds, and right of dower and thirds, or other instruments for the conveying, surrendering and relinquishing all or any part of my estate, right, title and interest, whether vested or con *414 tingent, choate or inchoate, therein." Mrs. Bauer was not made a party to this action.
It also appeared that certain persons had obtained judgments against Moritz Bauer prior to the time that he acquired title to the property in question, and which by orders of court, made also prior to Bauer’s acquisition of title, had been marked “lien suspended " •or “ partially suspended upon appéal," and that such persons were not made parties to this action.
The objection to the /title based upon the failure to make the wife of Moritz Bauer a party to the action presents the questions : (zz) of the power of a resident married woman to release her dower by attorney; (6) of her right, if she has such power, to make her husband her attorney for such purpose; and (c) whether the power •of attorney, if otherwise valid, authorized the release of the wife's dower in after-acquired property and for a nominal consideration. These questions are important because the decision of them not •only affects the title of the property in question, but may affect many other titles.
The Revised Statutes of this State contain the following provision : “ No act, deed or conveyance, executed or performed by the husband, without the assent of his wife, evidenced by the acknowledgment thereof, in the manner required by law to pass the estates of married women and no judgment or decree confessed by or recovered against him, and no laches, default, covin or crime of the husband, shall prejudice the right of his wife to her dower or jointure, or preclude her from the recovery thereof, if otherwise entitled thereto ” (4 R. S. 8th ed. p. 2456).
It has been decided by the courts of this State that the only way in which a wife can release her dower during the life of her husband, is by joining with him in a conveyance to a third person (Carson v. Murray, 3 Paige, 483 , Elmendorf v. Lockwood, 57 N. Y. 322 ; People v. Knickerbocker Life Ins. Co., 66 How. Pr. 115 ; Ford v. Knapp, 31 Hun, 522). It has also been held by the courts of other States, under statutes similar to our own, that the wife must execute the release herself, and that she cannot release by power of attorney (See Am. & Eng. Encyc. of Law, vol. 5, p. 914, and cases there cited). In 1878, however, the Legislature of this State passed the following statute :
*415 “ Any married woman, being a resident of this State and of the age of twenty-one years or more, may execute, acknowledge and deliver her power of attorney, with like force and effect, and in the same manner as if she were a single woman.”
The question presented for decision is, whether, assuming that prior to the passage of this statute, a married woman could not release her dower through an attorney in fact, this statute has authorized her to do so. It is suggested that the statute does not authorize a married woman to release her dower through an attorney, because the act provides that she may execute, acknowledge and deliver her power of attorney, with like force and effect and in the same manner as if she were a single woman ; and that the Legislature, in assimilating the case of the wife to that of a single woman, could not have intended to authorize the former to act through an attorney in any matter in which the latter could not do so ; and that a single woman cannot, of course, ever be vested with such an estate, and cannot, therefore, appoint an attorney for the purpose of releasing dower, therefore a married woman cannot do so. We think this is too narrow an interpretation of the statute. It is a general maxim of the law, that whatever a man suijtiris may do for himself he may do by another; and the same maxim applies, of course, to a single woman. We think that the true interpretation of the statute is, that just as a single woman can appoint an attorney to perform any act which she herself can do, so any act which can be done by a married woman of herself can be done by her duly appointed attorney; and as a married woman can release her dower by joining with her husband in a conveyance of the property to a third party, she may perform that act through an attorney.
It may be said that, as the Legislature originally prescribed a particular way in which a married woman, could release her dower, such special provision of the Revised Statutes should not be considered as modified or affected by the general provisions of the .above quoted act of 1878, which does not in terms refer to the release of dower, and which authorizes a power of attorney to be acknowledged in the same manner as if the woman executing the power were single. There would be force in this objection if the law in relation to acknowledgment of deeds and other instruments by married women had remained as it was when the Revised Stat *416 utes were adopted. It was provided in those statutes that the acknowledgment of a married woman residing within this State to-a conveyance purporting to be executed by her, should not be taken unless, in addition to the requisites required in the case of other persons, she acknowledged, on a private examination apart from her husband, that she executed such conveyance freely and without any fear or compulsion of her husband. And the provision of the Revised Statutes above quoted, in regard to conveyances releasing the right of the wife to her dower, provided that the assent of the wife must be evidenced by the acknowledgment thereof, in the manner required by law to pass the estates of married women.
It app'éars to have been considered by the Legislature that these provisions, in reference to the manner in which conveyances executed by married women should be acknowledged, afforded great protection to them; but whether such opinion was or was not well founded, such provisions have been entirely swept away by -later legislations, for, in 1879, the Legislature passed the following statute : “ The acknowledgment by married women, or the proof of the execution by married women, of deeds or other written instruments, may be made, taken and certified in the same manner as if they were sole, and all acts and parts of acts which require for them any other or different acknowledgments, proofs or certificates, thereof are hereby repealed ” (4 R. S., 8th ed. p. 2487).
As above stated, under the said act of 1878, acknowledgments of powers of attorney could be made by married women as if they were single, but under said act of 1879 all acknowledgements of married women of the execution of deeds and other written instruments can now be made, taken and certified in the same manner as if they are single, and the protection—if it was any protection— of married women in regard to their dower rights, and other rights in real property, afforded by the provisions as to private examination, has been entirely taken away, and, so far as the protection of such rights is concerned, it can make no possible difference whether the married woman releases her dower by joining with her husband in a conveyance, or whether she released the same through an attorney appointed by her for that purpose. Nor do we perceive any good reason whatever why a married woman may not as well appoint an attorney to execute a deed which releases her dower rights, as to *417 execute such deed herself. The reason of the rule ceasing, the rule itself fails, and we think that the objection is not well taken.
The second question'raised is whether, if a married woman has the power to appoint an attorney to release her dower, she can make her husband her attorney for such purpose.
We do not think this 'objection is well founded. It has been held that husbands and wives may legally contract with each other in reference to their separate estates (Owen v. Cawley, 36 N. Y. 600; Bodine v. Killeen, 53 Id. 93): that they may become agents for each other (Knapp v. Smith, 27 N. Y. 277): that a husband may assign to his wife a chose in action . (Seymour v. Fellows, 77 N. Y. 178), and it has very recently been held that the common law disability of a married woman to engage in a business as a co-partner or jointly with her husband was removed by chapter 90 of the Laws of i860 (Suau v. Caffe, 122 N. Y. 308). Under these decisions, if a married woman can release her dower rights through -an attorney, as we think she can, we are of the opinion that she can appoint her husband such attorney.
The third question raised is as to whether the power of attorney given by Mrs. Bauer to her husband gave him the right to convey property acquired after the execution of such power.
The power in question authorized Mr. Bauer to sell and convey all or any lands belonging to Mrs. Bauer situate within the United States. There is nothing whatever in the power which restricted it to lands belonging to Mrs. Bauer at the time the power was executed, and we think that it covers lands subsequently acquired.
Another objection to the title is, that certain judgment creditors should have been made parties to the action,
On April 10, 1889, one King recovered a judgment in the court of common pleas for $2,299.54. On June 12, 1889, an appeal was taken from said judgment to the General Term, and upon the consent of the plaintiff and the sureties upon the appeal bond, the judgment was marked “lien suspended on appealand,upon the record in the county clerk’s office, where the judgment had been docketed, a similar entry was made. On February 5, 1890, the judgment of the General Term was entered, affirming the above named judgment, and for $117.67 costs. Subsequently, an appeal whs taken from said last mentioned judgment to the court of *418 appeals. On July 2, 1890, an order was entered suspending the lien of both judgments as to property on which said judgments were or might become liens; this order was entered- by consent of the American Surety Company. On December 3, 1891, the lien was restored by proper entries in the judgment book, and on December 4, 1891, both judgments were assigned to the American Surety Company.
Moritz Bauer took title to the property in question on October 4, 1890, and conveyed the same on October 20, 1890.
The order entered on July 12, 1889.. directingthat the lien be suspended on appeal, did not in terms apply to after-acquired property. It is not necessary for the purposes of this appeal to decide, and we do not now decide, whether, under the various provisions of the Code in reference to the suspension of the lien of judgments on appeal, this order suspended the lien of the judgment as to property acquired by Bauer after it was entered. It is not disputed that the order entered suspending the lien upon the original judgment and upon the judgment for costs, at the General Term, was entered upon the consent of the American Surety. Company, that such lien should be suspended, not only as to property upon which the judgments were then liens, but as to after-acquired property. It is also undisputed that on February 4, 1891, both judgments were assigned to the American Surety Company, and that that company only can raise an objection as to the regularity of the foreclosure so far as relates to said judgments; and that company is estopped from raising such question by reason of the consent above mentioned.
Some question is also raised in regard to judgments recovered by one Healy; but by an order of this court, entered on consent of the plaintiff, all the real property of Moritz Bauer (with an exception which does not include the property in suit), upon which said judgments were or might thereafter become a lien, was exempted from the liens of said judgments; and such exemption remained in full force at the time of the recording of plaintiff’s mortgage and at the time of filing the notice of lis pendens herein.
. We are of the opinion that it was not necessary that either of the judgment creditors above mentioned should have been made parties to the action, and that the order appealed from should be affirmed, with costs.